**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RICHARD CEDENO DONASTORG,          ) Case No. EDCV 12-1654-AG (JPR)
                                   )
                Plaintiff,         )
                                   ) REPORT AND RECOMMENDATION OF
          vs.                      ) U.S. MAGISTRATE JUDGE
                                   )
RIVERSIDE COUNTY SHERIFF'S         )
DEPARTMENT et al.,                 )
                                   )
                Defendants.        )
_____  )

     This Report and Recommendation is submitted to the Honorable
Andrew J. Guilford, U.S. District Judge, under 28 U.S.C. § 636
and General Order 05-07 of the U.S. District Court for the
Central District of California.

                          **PROCEEDINGS**

     This 42 U.S.C. § 1983 action arises from Plaintiff's arrests
by Riverside County Sheriff's Department deputies on July 20 and
October 1, 2010.

     On November 26, 2012, Plaintiff filed a First Amended
Complaint against the sheriff's department, Sergeant Frederick,[1]
and Deputies Raul Lopez, Don Atkinson, Gregory Sell, and Chris

_____

     [1]   Plaintiff has not provided Defendant Frederick's first
name.

                               1

Ternes, naming each individual in his individual and official capacity.  (FAC at 2-5.)[2]  Plaintiff alleges that Defendant Lopez violated his constitutional rights by arresting him without probable cause on July 20, 2010 (FAC at 9-10), and Defendants Frederick, Lopez, Atkinson, Sell, and Ternes violated his constitutional rights by arresting him without probable cause and using excessive force against him on October 1 (FAC at 6-7, 11-17, 20-21).  Plaintiff further asserts that the sheriff's department was also responsible for these violations of his constitutional rights.  (FAC at 20-21.)

On February 14, 2013, Defendants answered the FAC and counterclaimed for damages stemming from Plaintiff's vandalism of a sheriff's car on October 1, 2010.  On September 16, 2013, Defendants moved for summary judgment; that same day, Plaintiff moved for leave to amend the FAC.  On September 19, 2013, the Court advised Plaintiff of his obligations under Federal Rule of Civil Procedure 56 and Local Rule 56.  On September 24, 2013, Defendants filed opposition to Plaintiff's motion for leave to amend; on October 9, Plaintiff filed a reply.  On January 9, 2014, Plaintiff filed a request for judicial notice.  On January 10, 2014, after receiving two extensions of time, he filed an opposition to the motion for summary judgment and another request for judicial notice.  Defendants filed a reply on January 22, 2014.  On January 24, 2014, Plaintiff filed a document titled, "Declaration of Richard Cedeno Donastorg Plaintiff's in Support

---

[2]      When a document, such as the FAC, is not sequentially numbered, the Court has used the pagination from its official Case Management/Electronic Case Filing system.

2

1  of Opposition to Defendants' Motion for Summary Judgmen[t]," with

2  several attached photographs and documents.  On February 4, 2014,

3  Defendants filed a supplemental reply to Plaintiff's January 24

4  filing.

5       For the reasons discussed below, the Court recommends that

6  Plaintiff's motion for leave to amend be denied and Defendants'

7  motion for summary judgment be granted.

8                    **SUMMARY JUDGMENT STANDARDS**

9       The Court must grant summary judgment if the papers "show[]

10  that there is no genuine issue as to any material fact and that

11  the movant is entitled to judgment as a matter of law."  Fed. R.

12  Civ. P. 56(a).  An issue is "genuine" only if a sufficient

13  evidentiary basis exists upon which a reasonable jury could find

14  for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477

15  U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

16  A factual dispute is "material" only if it might affect the

17  outcome of the suit under governing law.  Id. at 248.

18       The moving party bears the initial responsibility of

19  presenting the basis of its motion and identifying those portions

20  of the record that it believes demonstrate, together with

21  affidavits, the absence of a genuine issue of material fact.

22  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

23  2553, 91 L. Ed. 2d 265 (1986).  Once the moving party meets its

24  initial burden, the burden shifts to the opposing party to

25  demonstrate with specific facts, not mere conclusory allegations,

26  the existence of a genuine issue of material fact.  Anderson, 477

27  U.S. at 247-48, 256; see Taylor v. List, 880 F.2d 1040, 1045 (9th

28  Cir. 1989).  The opposing party "must do more than simply show

                                    3

1   that there is some metaphysical doubt as to the material facts."
2   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
3   586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); see
4   Anderson, 477 U.S. at 249 (noting that "in the face of the
5   defendant's properly supported motion for summary judgment, the
6   plaintiff could not rest on his allegations . . . to get to a
7   jury without any significant probative evidence tending to
8   support the complaint" (internal quotation marks omitted)).
9   Thus, summary judgment is appropriate if the nonmoving party
10  "fails to make a showing sufficient to establish the existence of
11  an element essential to that party's case, and on which that
12  party will bear the burden of proof at trial." Celotex, 477 U.S.
13  at 322.

14        The Court's function is not to weigh the evidence or
15  determine the truth of the matter but rather, after drawing all
16  inferences in the light most favorable to the nonmoving party, to
17  evaluate whether any genuine issue remains to be tried. See
18  Anderson, 477 U.S. at 249; Balint v. Carson City, 180 F.3d 1047,
19  1054 (9th Cir. 1999) (en banc). The Court may but is not
20  required to consider materials in the record not cited by the
21  parties. Fed. R. Civ. P. 56(c)(3).

22        **REQUESTS FOR JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS**
23        On September 16, 2013, Defendants requested that the Court
24  take judicial notice of the dockets in two of Plaintiff's
25  criminal cases. On January 10, 2014, Plaintiff requested that
26  the Court take judicial notice of some of his medical records,
27  including some from October 1, 2010; a transcript from his August
28  2011 trial; and a "Transcript of In field contact w/Richard

4

1  Donastorg," dated October 1, 2010.  The Court grants both

2  requests for judicial notice, which are unopposed.  See Fed. R.

3  Evid. 201.

4      On January 9, 2014, Plaintiff requested that the Court take

5  judicial notice of various documents regarding incidents that

6  occurred on July 5 and November 16, 2013.  The documents, which

7  include a felony complaint, a misdemeanor complaint, and several

8  police reports, indicate that on July 5, 2013, Plaintiff was

9  arrested and charged with violating California Penal Code

10 sections 69 (attempting to deter or resist officer by means of

11 threat or violence) and 148(a)(1) (resisting, delaying, or

12 obstructing officer in discharge or attempted discharge of

13 duties), and on November 17, 2013, he was arrested and charged

14 with violating sections 148(a)(1) and 602.1(a) (obstructing or

15 intimidating business operators or customers or refusing to leave

16 business premises after being asked to leave).  (See generally

17 Jan. 9, 2014 Req. Judicial Notice.)  None of that evidence is

18 relevant to Plaintiff's claims or Defendants' motion for summary

19 judgment.  As such, Plaintiff's second request for judicial

20 notice is denied.

21     Plaintiff's January 24, 2014 filing included numerous

22 photographs; some unidentified receipts; minute orders in two of

23 his unrelated criminal cases, showing that bench warrants issued

24 for him on October 10, 2013; and copies of his discovery requests

25 in this case, among other things.  Defendants object to the

26 exhibits on foundation, authentication, and relevance grounds.

27 (See Defs.' Supp. Reply at 1); see Fed. R. Civ. P. 56(c)(2) ("A

28 party may object that the material cited to support or dispute a

fact cannot be presented in a form that would be admissible in evidence."). Because Plaintiff provided no explanation of the various attachments, Defendants' objection is sustained. Moreover, to the extent Plaintiff submitted the photographs to establish that he suffered injuries as a result of the October 1, 2010 events, he also attached many similar photographs to his FAC and described his injuries in his January 10, 2014 declaration. That information is therefore already part of the record.

Plaintiff objects to Defendants' statements of undisputed fact 3, 4, 5, 6, 7, 8, and 9, regarding a police dispatch and Lopez's investigation, as unsupported by the evidence, citing his own declaration. Plaintiff's objections are overruled because he lacks personal knowledge regarding those events. Fed. R. Evid. 602. Indeed, Plaintiff admits that during the July 20, 2010 incident he stayed in his truck for at least five minutes before Lopez returned to arrest him. (Donastorg Decl. ¶¶ 6-7.) Plaintiff objects to statement 10, regarding Plaintiff's criminal charges, based on his own assertion that he was "wrongfully arrested." Plaintiff's objection calls for a legal conclusion and is overruled. Plaintiff also objects to portions of statements 11 and 12 that are not material. Finally, Plaintiff objects to statements 13, 14, and 15 because his section 148(a)(1) conviction allegedly resulted from the July 2010, not the October 2010, incident, but as discussed in Section I.B.2, it cannot be genuinely disputed that the conviction actually resulted from the October incident.

Defendants object to nearly all Plaintiff's undisputed statements, which are based on his own declaration, on relevance

6

grounds.   But many of Plaintiff's statements are in fact relevant
to whether Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129
L. Ed. 383 (1994), bars his claim for excessive force.   In any
event, Defendants' relevance objections are redundant to the
summary judgment standard and are overruled.   See Fed. R. Civ. P.
56(a) (summary judgment appropriate only when papers show no
genuine issue of "material" fact); Anderson, 477 U.S. at 248
("Factual disputes that are irrelevant or unnecessary will not be
counted.").   Defendants' objections are sustained as to
statements 5, 8, 54, 55, and 56 to the extent those statements
contain legal conclusions and statements 47, 48, 51, and 52 to
the extent they contain medical opinions.   See Fed. R. Evid. 701.
Defendants' remaining objections are overruled.

### SUMMARY OF MATERIAL FACTS

Except to the extent noted, the parties do not dispute the
following material facts.   When material facts are disputed, the
Court has adopted Plaintiff's version if it is based on some
actual evidence.   See In re Coordinated Pretrial Proceedings in
Petroleum Prods. Antitrust Litig., 906 F.2d 432, 441 (9th Cir.
1990) (noting that at summary judgment stage, court not required
to adopt unreasonable inferences from circumstantial evidence);
see also United States v. $133,420.00 in U.S. Currency, 672 F.3d
629, 638 (9th Cir. 2012) (conclusory evidentiary statements
unsupported by factual data do not create triable issue of fact
allowing party to survive summary judgment); FTC v. Publ'g
Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).

On July 20, 2010, Defendant Lopez was driving his patrol car
when Plaintiff, who was driving a silver truck, stopped him to

7

complain that someone had stolen his work tools.  (Donastorg
Decl. ¶¶ 3-4; Lopez Decl., Ex. 1 at 3; Pl.'s Jan. 10, 2014 Req.
Judicial Notice, Ex. 2 at 18-19.)  Lopez follow Plaintiff to
14521 Magnolia Street in Cabazon, which was the home of Bridgette
Montowine.  (Donastorg Decl. ¶ 5; Lopez Decl., Ex. 1 at 3; Pl.'s
Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 19-20.)  Plaintiff
believed that Bridgette[3] and her friend, Spencer St. John, had
stolen Plaintiff's work tools.  (Donastorg Decl. ¶ 3.)  Upon
arriving at Bridgette's house, Lopez asked Plaintiff what he was
doing there.  (Lopez Decl., Ex. 1 at 3; Pl.'s Jan. 10, 2014 Req.
Judicial Notice, Ex. 2 at 21.)  While talking with Plaintiff,
Lopez saw an unknown male make "a gesture with his hand in the
shape of a firearm" and point to Plaintiff's vehicle, and he
heard sheriff's "dispatch" broadcast that a Hispanic male in a
silver truck had brandished a gun in front of several people at
14521 Magnolia.  (Lopez Decl., Ex. 1 at 3; see also Pl.'s Jan.
10, 2014 Req. Judicial Notice, Ex. 2 at 6-7, 22.)  Lopez told
Plaintiff to wait in his truck.  (Donastorg Decl. ¶ 6.)

Lopez interviewed Bridgette, Lake Montowine, and Kirby Sheek
and had Deputy Atkinson interview St. John.  (Lopez Decl. ¶ 4.)
Bridgette reported that 10 minutes earlier, Plaintiff had pulled
up to her house; when she approached the passenger-side window of
his truck with St. John and her 11-year-old son, Lake, Plaintiff
yelled at her about one of her family members stealing his tools,
told her to "watch [her] family," and raised a black metal

---

[3]    Because Bridgette Montowine and her son, Lake Montowine,
share the same last name, the Court refers to them by their first
names.

8

1  revolver to about chest level. (Lopez Decl., Ex. 1 at 3; Pl.'s
2  Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 23.)  Bridgette said
3  Plaintiff then drove away and St. John called 911 to report what
4  had occurred. (Lopez Decl., Ex. 1 at 3.)  Lake reported that
5  Plaintiff yelled at Bridgette and raised the black metal handgun
6  to his chest. (<u>Id.</u> at 4.)  Lake said Bridgette told him to go
7  into the house and as he started to do so, Plaintiff lowered the
8  gun, pointed his finger in the shape of a handgun at Lake, and
9  told him that he "better tell the fuckin truth." (<u>Id.</u>)  Sheek,
10  who had been standing across the street, reported that the silver
11  truck had approached Bridgette's house and stopped quickly.
12  (<u>Id.</u>)  Bridgette, Lake, and St. John stood next to the passenger-
13  side window; Sheek heard arguing and saw Bridgette step back from
14  the vehicle quickly, St. John step back and hold his hands in the
15  air "as if he were frightened of something," and Lake turn and
16  run toward the house. (<u>Id.</u>)

17      St. John reported to Atkinson that Plaintiff had accused
18  Bridgette of stealing, asked if she "had family," said "I'll kill
19  you motherfucker," and removed a revolver from the center console
20  of his truck and lifted it to where it could be seen. (<u>Id.</u> at
21  6.)  St. John said he had made the emergency call to the police.
22  (<u>Id.</u>)  Based on the witnesses' statements, Lopez determined that
23  he had probable cause to arrest Plaintiff. (Lopez Decl. ¶ 5.)
24  Plaintiff was arrested and his truck impounded. (Donastorg Decl.
25  ¶¶ 7, 9; Lopez Decl., Ex. 1 at 6.)  According to Plaintiff, Lopez
26  arrested him "[f]ive minutes" after telling him to wait in his
27  truck. (Donastorg Decl. ¶ 7.)  Plaintiff's statement conflicts
28  with his own trial testimony that Lopez left him in his truck for

1  five minutes, then detained him in a patrol car for 10 minutes
2  before arresting him.  (Pl.'s Jan. 10, 2014 Req. Judicial Notice,
3  Ex. 2 at 252.)  In the FAC, moreover, Plaintiff stated that Lopez
4  left him in his truck for five to 10 minutes before arresting
5  him.  (FAC at 9.)  In any event, even under Plaintiff's most
6  recent version of events, Lopez and Atkinson had time to speak to
7  the witnesses before arresting Plaintiff.

8  Officers searched Plaintiff's truck and the surrounding area
9  but found no firearm.  (Donastorg Decl. ¶ 8; Lopez Decl., Ex. 1
10 at 3, 6; Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 7-8,
11 23-24.)  Lopez searched Plaintiff's mother's home, where
12 Plaintiff lived, and found a shotgun in Plaintiff's room.  (Lopez
13 Decl., Ex. 1 at 4; Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex.
14 2 at 25-26, 29, 36.)  Lopez collected the shotgun as evidence.
15 (Lopez Decl., Ex. 1 at 4; Pl.'s Jan. 10, 2014 Req. Judicial
16 Notice, Ex. 2 at 36.)  He also conducted a criminal-history check
17 and found that Plaintiff had been convicted of several felonies
18 and served several years in prison.  (Lopez Decl., Ex. 1 at 4.)
19 Plaintiff was booked for violations of California Penal Code
20 section 422, making criminal threats; section 12021(a)(1), being
21 a felon in possession of a firearm; section 417(a)(2), exhibiting
22 a firearm in a rude, angry, or threatening manner; and section
23 182, conspiring to commit a crime.  (Lopez Decl., Ex. 1 at 4.)
24 Plaintiff's "work apprentice," Gregory Daniels, was a passenger
25 in Plaintiff's truck and was also arrested that day.  (Donastorg
26 Decl. ¶¶ 4, 7.)  Plaintiff was later charged in Riverside County
27 Superior Court case number BAF10000523 with making criminal
28 threats and possession of a firearm by a felon.  (Defs.' Req.

Judicial Notice, Ex. 1 at 2.)   The criminal-threats charge was later discharged.   (Id.)

On the morning of September 30, 2010, Defendant Ternes spoke with Plaintiff by phone regarding the theft of his tools. (Donastorg Decl. ¶¶ 11-13.)   That same day, Plaintiff failed to appear at a preliminary hearing in case number BAF10000523, and a bench warrant issued.   (Defs.' Req. Judicial Notice, Ex. 1 at 45.)

At 8 a.m. on October 1, 2010, Plaintiff saw Defendants Sell and Ternes standing outside his front gate.   (Donastorg Decl. ¶ 16.)   Ternes asked Plaintiff to open the gate so they could discuss the stolen tools.   (Id. ¶ 18.)   When Plaintiff unlocked the gate, Sell and Ternes pushed Plaintiff to the ground, handcuffed him, and put him in the back of a patrol car "without incident."   (Id. ¶ 20.)   Plaintiff's dog jumped into the front passenger seat of the patrol car.   (Id. ¶ 22.)   Sell told Plaintiff to get out of the patrol car and call his dog; Plaintiff complied and the dog went back into Plaintiff's yard. (Id. ¶¶ 25-26.)

Plaintiff asserts that at that point, he was handcuffed, "not a threat to anyone[,] and making no attempt to flee." (Id. ¶ 29.)   Ternes nevertheless "forcibly" pushed Plaintiff against the car and twisted his wrists against a previous kidney wound (which had apparently resulted from a stabbing several weeks earlier (see Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex. 1, CM/ECF Doc. 49-1 at 2)); Ternes, Atkinson, Lopez, and Sell "slammed" Plaintiff to the ground and "smash[ed]" his face into the asphalt; and Lopez pressed his knee into Plaintiff's neck and

sprayed his face with pepper spray. (Donastorg Decl. ¶¶ 29-32.)
Plaintiff asserts that he requested medical help "multiple
times." (Id. ¶ 33.) Ternes and Sell tied Plaintiff's ankles
together while Atkinson and Pike pressed their weight onto his
back and shoulders. (Id. ¶ 34.) Ternes, Sell, Atkinson, and
Pike "dragged" Plaintiff to the patrol car, and Lopez opened both
doors to the back seat. (Id. ¶ 35.) Defendant Frederick arrived
and "punched [Plaintiff] in the back of [his] head and neck."
(Id. ¶ 38.) Frederick "grabbed" Plaintiff's head, and the other
officers lifted him and "threw" him into the patrol car. (Id.
¶ 39.) Frederick shut the door to the patrol car, hitting
Plaintiff's head and causing his mouth and nose to bleed. (Id.
¶ 40.) Plaintiff asserts that he then "knocked on the car window
for ventilation and medical assistance"; "Lopez opened the back
door" and "pepper sprayed [Plaintiff] one more time in the face."
(Id. ¶¶ 42-43.)

Ternes and Sell drove away with Plaintiff in the patrol car.
(Id. ¶ 45.) Plaintiff asserts that he "knocked on the window for
help, because [he] needed medical assistance and ventilation, and
struggled to breathe due to the pepper spray." (Id. ¶ 46.)
Plaintiff contends that Ternes and Sell "pulled the car over on
Main Street in Cabazon, and pulled me out of the patrol car and
got physical with me." (Id. ¶ 47.) Plaintiff asserts that
Lopez, Atkinson, Frederick, and Pike then "arrived and continued
the beatings." (Id. ¶ 48.) He alleges that he experienced
"excruciating pain" from the pepper spray and beating. (Id. ¶
44.)

As a result of the October 1, 2010 events, Plaintiff was

12

charged in Riverside County Superior Court case number
BAF10000598 with committing vandalism over $400, in violation of
California Penal Code section 594(b)(1), and resisting, delaying,
or obstructing a public officer, peace officer, or emergency
medical technician, in violation of section 148(a)(1). (Defs.'
Req. Judicial Notice, Ex. 2 at 2.)  That case was eventually
consolidated with case number BAF10000523. (Defs.' Req. Judicial
Notice, Ex. 1 at 37.)

     At Plaintiff's trial in August 2011, two deputies and a
paramedic testified regarding the October 1, 2010 events.
According to the witnesses, after Plaintiff was allowed out of
the patrol car to put his dog in his yard, he refused to get back
in the car and began "yelling profanity," screaming, and "pushing
[officers] away from the car with his body" while handcuffed.
(Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 101-03; see
also id. at 164-65.)  Deputies were unable to control Plaintiff,
and he eventually pushed three deputies into a fence, causing all
four men to fall down.  (Id. at 104-05.)  Once on the ground,
Plaintiff began yelling, "thrashing," "moving[] every inch of his
body," and trying to kick and spit at the deputies.  (Id. at 105-
06; see also id. at 165 (noting that "struggle" ensued).)  The
officers' attempts to use control holds were ineffective, and
Plaintiff broke a hobble restraint on his legs.  (Id. at 108-10.)
Deputy Lopez sprayed Plaintiff once or twice with pepper spray,
which had no effect.  (Id. at 110, 165.)  When officers attempted
to pick up Plaintiff and place him in the back seat of the patrol
car, Plaintiff "tr[ied] everything" to avoid being put in the
car, including sticking his legs out and grabbing objects with

1   his legs and backs of his hands.  (Id. at 111-13.)  After

2   deputies succeeded in placing Plaintiff in the car, he wiggled

3   back out and landed face down on his stomach on the asphalt.

4   (Id. at 113-14.)  Plaintiff continued to move his legs and arms,

5   yell, and try to kick officers.  (Id. at 115-16.)  Deputies

6   eventually succeeded in again placing him into the back seat of

7   the patrol car, where he continued to move around, yell, and

8   scream.  (Id. at 116-17.)

9       Two officers attempted to drive Plaintiff to the hospital

10  because he had been pepper-sprayed and was fighting with them,

11  but Plaintiff began banging his handcuffs on the back windshield

12  of the patrol car while screaming and yelling.  (Id. at 117-19,

13  168-69.)  Plaintiff then laid down on his back and began kicking

14  the rear passenger door very hard, shaking the whole car (id. at

15  121, 169-70); he ignored the officers' requests to stop, and

16  eventually the door began to come open (id. at 122-25).  When

17  officers stopped the car on Main Street to assess the door and

18  make sure Plaintiff did not escape (id. at 124-26, 169-70), the

19  rear passenger door was "pushed out from its normal state [and]

20  was damaged," and the front passenger door would not open as a

21  result (id. at 127-28).  Plaintiff continued to kick the door,

22  scream, and yell.  (Id. at 127-29.)  When officers attempted to

23  transfer Plaintiff to an undamaged patrol car, he refused to get

24  in and put his arms and legs out to thwart the deputies.  (Id. at

25  129-30, 170.)  As a "last resort," officers called an ambulance

26  and, with the help of firefighters and paramedics, were able to

27  secure Plaintiff on a backboard with soft restraints.  (Id. at

28  131, 135, 172.)  Accompanied by two officers, Plaintiff was

14

transported to the hospital in an ambulance (id. at 136-38, 173);
he was spitting, moving, yelling, and screaming and did not calm
down for the entire ambulance ride (id. at 136-38, 173-74, 184-
86).  Plaintiff was finally sedated at the hospital.  (Id. at
139-140.)  Medical records from his October 1, 2010
hospitalization reflect that he tested positive for amphetamine,
methamphetamine, and marijuana (Pl.'s Jan. 10, 2014 Req. Judicial
Notice, Ex. 1, CM/ECF Docs. 49 at 9, 49-1 at 58, 49-2 at 13, 15,
25) and "was evaluated in the emergency room where [he] was very
combative and agitated and had to be sedated" (id., CM/ECF Doc.
49-1 at 58; see also id., CM/ECF Doc. 49-2 at 6 (noting that
Plaintiff was "heavily sedated due to violent behavior"), 22-23
(noting that Plaintiff was kept in soft restraints while
hospitalized)).

On August 15, 2011, a Riverside County Superior Court jury
found Plaintiff guilty of vandalism of property valued at $400 or
more based on the damage to the patrol car and resisting,
delaying, or obstructing any public officer, peace officer, or
emergency medical technician in the discharge or attempted
discharge of his or her duties.  (Defs.' Req. Judicial Notice,
Ex. 1 at 2, 8-9.)  The jury was unable to reach a verdict on the
charge of being a felon in possession of a firearm, and the
prosecutor dismissed it in the interest of justice.  (Id.)

**PLAINTIFF'S CLAIMS**

Plaintiff alleges that Defendants Riverside County Sheriff's
Department, Lopez, Atkinson, Sell, Ternes, and Frederick violated
his constitutional rights by (1) unlawfully arresting him without
probable cause on July 20 and October 1, 2010, and (2) using

15

excessive force against him by "beating and kicking [him] at
[his] house and on Main Street" on October 1, 2010.  (FAC at 20-
21.)

Plaintiff did not raise any unlawful-search claims in the
claims section of the FAC.  (See FAC at 20-21.)  Even liberally
construing his filings as raising such claims, however, he has
failed to adequately support them.  Plaintiff first alleged that
he did not consent to the July 20, 2010 searches of his truck and
home in his January 10, 2014 declaration and opposition to the
motion for summary judgment, not in the FAC.  (See FAC at 10
(alleging only that on July 20, 2010, "a search was conducted and
nothing was found in my truck, in the area, or on my
possession"); Donastorg Decl. ¶ 8 (alleging that Lopez "performed
a search without my consent"); Opp'n at 7 ("Lopez then conducted
a search without [Plaintiff's] consent, and no firearm was found
in his truck, in the area, or in his possession."), 21 (arguing
that Plaintiff "has demonstrated facts showing that Defendants
violated his Fourth Amendment rights by . . . [the] unlawful
search of Plaintiff's truck and home")).  In any event,
Plaintiff's own evidence undermines his allegations.  (See Pl.'s
Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 253-54 (Plaintiff's
testimony at criminal trial that he told Lopez, "If you want, you
can go to my house so that you can see that I don't have a
revolver"); id. at 26 (Lopez's testimony that Plaintiff consented
to search of his home); Lopez Decl., Ex. 1, at 4 (Lopez's police
report stating that Plaintiff consented to search of his home);
id. at 254 (Plaintiff's testimony that his mother consented to
search of her home, where he lived); id. at 218-19 (Plaintiff's

mother's testimony that she consented to search of her home).)
To the extent Plaintiff attempts to belatedly raise an unlawful-
search claim regarding the July 20, 2010 incident, therefore, he
has failed to allege sufficient facts or produce sufficient
evidence to support it.  See Publ'g Clearing House, 104 F.3d at
1171 ("A conclusory, self-serving affidavit, lacking detailed
facts and any supporting evidence, is insufficient to create a
genuine issue of material fact.").

Plaintiff also fails to support his allegations of an
unlawful search on October 1, 2010, which he likewise did not
include as a separate claim in the "claims" section of the FAC.
(See FAC at 20-21.)  Plaintiff asserted in his FAC and January
10, 2013 declaration that after he was arrested on October 1,
2010, deputies "ransacked" his mother's home "for about twenty
minutes" "without permission or a search warrant."  (FAC at 12;
Donastorg Decl. ¶ 21.)  But no evidence indicates that any deputy
searched Plaintiff's home on October 1, 2010.  None of the
deputies testified that a search was conducted (see, e.g., Pl.'s
Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 94-101 (Ternes's
testimony regarding Plaintiff's arrest), 158-65 (Sell's testimony
regarding Plaintiff's arrest)), and Plaintiff himself seemed to
testify that the deputies did not go into his house after his
arrest (id. at 258-59 (Plaintiff's testimony that deputies "had
not been inside the house").)  To the extent Plaintiff seeks to
assert an unlawful-search claim based on the October 1, 2010
events, therefore, he has failed to support it.  See Publ'g
Clearing House, 104 F.3d at 1171.

In his Opposition, Plaintiff contends that Defendants used

17

excessive force against him on October 1, 2010, by placing him in
tight handcuffs and refusing to loosen them.  (Opp'n at 18.)  For
the reasons discussed in Section I.B, any such claim is likely
barred by <u>Heck v. Humphrey</u>.  In any event, although an officer's
refusal to remove tight handcuffs from a prisoner's wrists may
constitute excessive force when the prisoner's repeated pleas to
loosen the cuffs were ignored and the cuffs caused severe pain or
lasting injury, <u>see</u> <u>Wall v. Cnty. of Orange</u>, 364 F.3d 1107, 1112
(9th Cir. 2004); <u>Alexander v. Cnty. of L.A.</u>, 64 F.3d 1315, 1322-
24 (9th Cir. 1995), here Plaintiff has failed to point to any
evidence that he informed Defendants his handcuffs were too tight
and asked that they be loosened or that Defendants ignored such
pleas.  In his FAC and declaration, rather, Plaintiff alleges
only that he "endured excruciating pain caused by the handcuffs
being so tight while I was being dragged by my handcuffed
wrists." (Donastorg Decl. ¶ 36; <u>accord</u> FAC at 14.)  He asserts
that he continues to have pain in his right wrist and fingers and
"had carpal tunnel surgery on [his] right hand due to the
excessive force used by Defendants while [he] was handcuffed"
(Donastorg Decl. ¶¶ 49-50; <u>see also</u> FAC at 18-19), but he does
not specifically claim that those alleged injuries resulted from
tight handcuffing.  Rather, he asserts that he "had surgery on
[his] right hand for carpal tunnel do [sic] to Sgt Frederick
twisting [his] wrists so hard w[h]ile handcuffed and by Deputy
Burke and Pike drag[g]ing [him] and lifting [him] by [his]
handcuffed wrists."  (FAC 18-19.)

     In any event, he does not point to any medical evidence
supporting any such claim, and records from his hospitalization

18

after the October 1, 2010 incident generally show only that he had some abrasions or lacerations on his arms, wrists, and hands (Pl.'s Jan. 10, 2014 Req. Judicial Notice, CM/ECF Doc. 49 at 27 (noting abrasions on left arm and right hand); id., CM/ECF Doc. 49-1 at 2 (noting lacerations on wrists), 21 (noting bruises on lower arms)) and that his right arm and hand had "some trace edema" and were "slightly painful," (id., CM/ECF Doc. 49-2 at 13; see also id. CM/ECF 49-1 at 26 (noting pain lower right arm), 26 (noting plaintiff complained of pain and swelling in arms).)  As such, Plaintiff has failed to sufficiently allege an excessive-force claim based on the allegedly tight handcuffs.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("Arpin's claim of injury is equally unsupported as she does not provide any medical records to support her claim that she suffered injury as a result of being handcuffed."); Gause v. Mullen, CV 12-1439-PHX-RCB (MEA), 2013 WL 5163245, at *10 (D. Ariz. Sept. 12, 2013) ("Plaintiff's only evidence consists of general allegations that are insufficient to demonstrate that [deputies] ignored complaints that the handcuffs were too tight or that Plaintiff was demonstrably injured.").

**DISCUSSION**

**I.  Defendants' Motion for Summary Judgment Should be Granted**

Defendants argue that Plaintiff cannot prove his claims because the police had probable cause to arrest him on July 20 and October 1, 2010; his claims are barred by Heck, 512 U.S. 477; and he has alleged no facts to support municipal liability. (Mot. Summ. J. at 1-13.)  For the reasons discussed below, Defendants' motion should be granted.

19

A. <u>Defendants Had Probable Cause to Arrest Plaintiff</u>

Defendants assert that Plaintiff cannot prove his claim of unlawful arrest on July 20, 2010, because Lopez had probable cause to arrest Plaintiff, and in any event Lopez is entitled to qualified immunity. (Mot. Summ. J. at 7-9.) Defendants further assert that Plaintiff cannot prove his claim of unlawful arrest on October 1, 2010, because Plaintiff had an outstanding warrant. (<u>Id.</u> at 10.)

1. *Applicable law*

The Fourth Amendment "guarantees citizens the right to be secure in their persons against unreasonable seizures." <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) (internal quotation marks and alteration omitted). Accordingly, police may arrest a citizen only if they have probable cause to believe he committed a crime. <u>Morgan v. Woessner</u>, 997 F.2d 1244, 1252 (9th Cir. 1993) (citing <u>Adams v. Williams</u>, 407 U.S. 143, 148-49, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972)).

"Probable cause exists where the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed . . . ." <u>Dunaway v. New York</u>, 442 U.S. 200, 208 n.9, 99 S. Ct. 2248, 2254 n.9, 60 L. Ed. 2d 824 (1979) (internal quotation marks and alterations omitted). Probable cause is an objective standard, <u>John v. City of El Monte</u>, 515 F.3d 936, 940 (9th Cir. 2008) (as amended), and the determination of whether it existed is based only on the

20

1   information known to the officers at the time of arrest,

2   Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160

3   L. Ed. 2d 537 (2004).

4              2.   *Defendant Lopez had probable cause to arrest*

5                   *Plaintiff on July 20, 2010*

6        The undisputed evidence shows that Defendant Lopez had

7   probable cause to arrest Plaintiff on July 20, 2010.  Plaintiff

8   was arrested for making criminal threats, being a felon in

9   possession of a firearm, and exhibiting a firearm in a rude,

10  angry, or threatening manner.  (Lopez Decl., Ex. 1 at 4; see also

11  Donastorg Decl. ¶ 7.)  A reasonable person would have concluded,

12  based on the facts known to Lopez, that it was fairly probable

13  that Plaintiff committed one or more of those crimes.  See United

14  States v. Carranza, 289 F.3d 634, 640 (9th Cir. 2002) (probable

15  cause exists if "a prudent person would have concluded that there

16  was a fair probability that [the defendant] had committed a

17  crime" (internal quotation marks omitted)).

18       At Bridgette's house, a man gestured to Lopez that Plaintiff

19  had a gun.  (Lopez Decl., Ex. 1 at 3.)  Bridgette told Lopez that

20  10 minutes earlier, Plaintiff had yelled at her about his tools,

21  threatened her and her family, and displayed a handgun.  (Lopez

22  Decl., Ex. 1 at 3.)  Bridgette's son, Lake, similarly reported

23  that Plaintiff had yelled at Bridgette, displayed a handgun, and

24  told Lake to "tell the fuckin truth."  (Id. at 4.)  St. John told

25  Defendant Atkinson that Plaintiff had accused Bridgette of

26  stealing, threatened her, and displayed a handgun.  (Id. at 6);

27  see also Garcia v. Cnty. of Merced, 639 F.3d 1206, 1211 (9th Cir.

28  2011) ("When there has been communication among agents, probable

1  cause can rest upon the investigating agents' 'collective

2  knowledge.'").   Bridgette and St. John both said Plaintiff

3  displayed the gun but did not point it at Bridgette, which was

4  consistent with Lake's account that Plaintiff "raise[d]" the

5  handgun "to his chest." (Lopez Decl., Ex. 1 at 3-4, 6.)   Sheek,

6  who was performing repair work nearby, told Lopez that Bridgette,

7  Lake, and St. John backed quickly away from Plaintiff's truck,

8  and St. John lifted his hands in the air as if he was frightened

9  of something.  (Id. at 4.)   Such detailed, corroborated

10  statements were sufficient to establish probable cause to arrest

11  Plaintiff.   See Peng v. Mei Chin Penghu, 335 F.3d 970, 979 (9th

12  Cir. 2003) (noting that police have probable cause to arrest

13  suspect, despite "presence of a factual dispute regarding a

14  victim's complaint," when victim's statements "are sufficiently

15  definite to establish that a crime has been committed" and

16  "corroborated by either the surrounding circumstances or other

17  witnesses"); Brainerd v. Cnty. of Lake, 357 F. App'x 88, 90 (9th

18  Cir. 2009) (deputies' "probable cause determination was supported

19  by reasonably trustworthy information, including detailed

20  statements from the alleged victim and a witness and inferences

21  reasonably drawn from the surrounding circumstances"); Tensley v.

22  City of Spokane, 267 F. App'x 558, 560 (9th Cir. 2008) (probable

23  caused existed based on independent investigation and "statements

24  of two adult witnesses, each of whom gave a detailed and broadly

25  consistent account of the alleged crime").

26      Plaintiff contends, however, that Lopez lacked probable

27  cause to arrest him because "(1) there was no gun found at the

28  scene; (2) [Plaintiff] asked the police officers to assist him;

22

(3) [Plaintiff] went with police to the scene; and (4) [Bridgette] and her associates had reason to lie to the officers because [Plaintiff] was accusing her family member of theft." (Opp'n at 13.)  The fact that no handgun was found, however, does not negate probable cause because Plaintiff left the scene after allegedly displaying the gun and could have disposed of it before returning with Lopez.  (See Lopez Decl. Ex. 1, at 3.)  The fact that Plaintiff told Lopez his tools were stolen and asked Lopez to follow him to Bridgette's house, moreover, actually tends to support a finding of probable cause because it is consistent with witnesses' statements that Plaintiff accused Bridgette or her family member of stealing his tools.  Indeed, St. John apparently reported Plaintiff's threat and display of the gun to the police before Lopez arrived on the scene, which undermines any implication that the witnesses invented the story in response to Lopez's investigation of the alleged theft.

Finally, Plaintiff argues that probable cause did not exist because the charges of displaying a firearm and making criminal threats were "dismissed in court." (Opp'n at 12.)  The fact that Plaintiff was not convicted of the crimes on which he was arrested, however, does not establish that probable cause did not exist.  See Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988).  Thus, Plaintiff has failed to point to any information known to Lopez that actually negated probable cause.  See Tensley, 267 F. App'x at 560 (upholding summary judgment for defendants and noting that plaintiff "alleges nothing known to the officers at the time of the arrest that would have negated probable cause").

1    Construing all inferences in favor of Plaintiff, a
2   reasonably prudent person would have concluded, based on the
3   facts known to Lopez at the time of the arrest, that Plaintiff
4   likely committed a crime.  Summary judgment in favor of
5   Defendants should be granted on this claim.  See Carranza, 289
6   F.3d at 640.  Because the Court finds that Defendant Lopez had
7   probable cause to arrest Plaintiff, it does not reach Defendants'
8   argument that he is entitled to qualified immunity.  (Mot. Summ.
9   J. at 9.)

10          3.    *Defendants Lawfully Arrested Plaintiff on October*
11                *1, 2010*

12    Construing the evidence in the light most favorable to
13   Plaintiff, there can be no genuine dispute that Defendants
14   lawfully arrested Plaintiff on October 1, 2010.  Minutes from a
15   Riverside County Superior Court proceeding in case number
16   BAF10000523 show that on September 28, 2010, the court set a
17   preliminary hearing for September 30 and "ordered [Plaintiff] to
18   return on any and all future hearing dates." (See Defs.' Req.
19   Judicial Notice, Ex. 1 at 45-46).  On September 30, 2010, the
20   court noted that Plaintiff was not present and a "bench warrant
21   issued for failure to appear" that day. (See Defs.' Req.
22   Judicial Notice, Ex. 1 at 45.)  At Plaintiff's subsequent trial,
23   Defendants Ternes and Sell both testified that they went to
24   Plaintiff's house on October 1, 2010, to get more information
25   about the theft of Plaintiff's tools and to take him into custody
26   on the bench warrant. (See Pl.'s Jan. 10, 2014 Req. Judicial
27   Notice, Ex. 2 at 85, 157.)  Defendants were entitled to arrest
28   Plaintiff on that warrant.  See, e.g., Luckes v. Cnty. of

<u>Hennepin</u>, 415 F.3d 936, 939 (8th Cir. 2005) ("Because Luckes was named in a valid bench warrant . . . probable cause for his arrest pursuant to that warrant was established, and his Fourth Amendment argument is thus without merit."); <u>Doe v. Sheriff of DuPage Cnty.</u>, 128 F.3d 586, 587-88 (7th Cir. 1997) (noting that when plaintiff "missed a court date" and court "issued a bench warrant for her arrest," "[t]he bench warrant provided probable cause for [plaintiff's] arrest"); <u>United States v. Evans</u>, 574 F.2d 352, 355 (6th Cir. 1978) (noting that bench warrants issued for failure to appear in court "are clearly valid and based on probable cause").

Some courts, including the Ninth Circuit, have indicated in passing that a bench warrant for failure to appear does "not amount to a judicial finding of probable cause . . . in the traditional sense," but even those courts have nevertheless concluded that "police, armed with the warrant, had authority to find and seize [the suspect] anywhere they could find him for his failure to appear in court" and that no Fourth Amendment violation resulted. <u>See</u> <u>United States v. Spencer</u>, 684 F.2d 220, 223 (2d Cir. 1982) (holding that police could enter suspect's home to arrest him on bench warrant if they had probable cause to believe he was there); <u>see also</u> <u>United States v. Gooch</u>, 506 F.3d 1156, 1159 (9th Cir. 2007) (quoting <u>Spencer</u>). Plaintiff, moreover, does not contend that the warrant was invalid or that Defendants should have known as much.

In sum, the evidence submitted by both parties shows that a bench warrant issued on September 30, 2010, and that the officers arrested Plaintiff the next day on it. Defendants are therefore

1    entitled to summary judgment on Plaintiff's claim that he was

2    unlawfully arrested on October 1, 2010.

3        B.    Plaintiff's Excessive-Force Claim Is Barred by *Heck v.*

4              *Humphrey*

5        Defendants argue that Plaintiff's excessive-force claim is

6    barred by <u>Heck</u> because its success would render invalid his

7    underlying conviction for resisting, delaying, or obstructing a

8    peace officer or emergency medical technician under section

9    148(a)(1).  (Defs.' Mot. Summ. J. at 10-12.)  For the reasons

10   discussed below, summary judgment for Defendants should be

11   granted.

12            1.   *Applicable law*

13       In <u>Heck</u>, the U.S. Supreme Court held that if a judgment in

14   favor of a plaintiff in a civil rights action would necessarily

15   imply the invalidity of his or her conviction or sentence, the

16   complaint must be dismissed unless the plaintiff can demonstrate

17   that the conviction or sentence has been invalidated.   512 U.S.

18   at 486-87; <u>see also</u> <u>Smith v. City of Hemet</u>, 394 F.3d 689, 695

19   (9th Cir. 2005) (en banc) ("<u>Heck</u> says that if a criminal

20   conviction arising out of the same facts stands and is

21   fundamentally inconsistent with the unlawful behavior for which

22   section 1983 damages are sought, the 1983 action must be

23   dismissed." (internal quotation marks omitted)).   Thus, the

24   "relevant question" in a § 1983 suit is whether success would

25   "'necessarily imply' or 'demonstrate' the invalidity of the

26   earlier conviction or sentence."   <u>Id.</u> (quoting <u>Heck</u>, 512 U.S. at

27   487).

28

Section 148(a)(1) provides that "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished." To be convicted under section 148(a)(1), a defendant must have resisted, delayed, or obstructed a police officer "in the lawful exercise of his or her duties." Hooper v. Cnty. of San Diego, 629 F.3d 1127, 1130 (9th Cir. 2011) (noting that section 148(a)(1) "is much broader than merely resisting arrest"); accord Smith, 394 F.3d at 695. Thus, the lawfulness of the officer's conduct at the relevant time is an essential element of a section 148(a)(1) offense. Hooper, 629 F.3d at 1130; Smith, 394 F.3d at 695; see also Yount v. City of Sacramento, 43 Cal. 4th 885, 894, 76 Cal. Rptr. 3d 787, 795 (2008) (noting that section 148(a)(1) "requires that the officer be lawfully engaged in the performance of his or her duties" (emphasis in original)). "A police officer is not lawfully performing her duties if she arrests an individual without probable cause or uses unreasonable or excessive force on the individual at the time the defendant's unlawful resistance, delay or obstruction is occurring." Rodriquez v. City of Modesto, 535 F. App'x 643, 644 (9th Cir. 2013) (citations omitted).

A conviction for resisting a peace officer under California law does not always preclude an excessive-force claim under § 1983. See Beets v. Cnty. of L.A., 669 F.3d 1038, 1042 (9th Cir. 2012) (excessive-force allegation not Heck barred "if it [was] distinct temporally or spatially from the factual basis for the person's conviction"); Hooper, 629 F.3d at 1134 (excessive-

27

force claim not <u>Heck</u> barred "when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'").  Such claims have been permitted to proceed when a plaintiff alleges either that "the arresting officers used excessive force subsequent to [plaintiff's] unlawful resistance, delay, or obstruction, such as a claim of post-arrest excessive force," <u>Rodriguez</u>, 535 F. App'x at 645 (citing <u>Sanford v. Motts</u>, 258 F.3d 1117, 1119-20 (9th Cir. 2001)), or that "though having a right to use reasonable force based on [p]laintiff's § 148(a)(1) violations, the arresting officers responded with excessive force," <u>id.</u> (citing <u>Hooper</u>, 629 F.3d at 1133; <u>Yount</u>, 76 Cal. Rptr. 3d at 799).

        2.  *Discussion*

        As an initial matter, Plaintiff's contention that his excessive-force claim cannot be <u>Heck</u> barred because he was "never charged with or convicted for resisting arrest for the October 1, 2010 incident" and was "only charged with vandalism for the October 1, 2010 incident" (Opp'n at 6, 14) fails because the evidence submitted by both parties clearly refutes it.  The docket in case number BAF10000598 shows charges of vandalism <u>and</u> resisting an officer and lists a "violation date" of October 1, 2010.  (Defs.' Req. Judicial Notice, Ex. 2 at 1-2.)  That case was later consolidated with case number BAF10000523, and that case's docket shows that Plaintiff was convicted of vandalism and resisting an officer in August 2011.  (Defs.' Req. Judicial Notice, Ex. 1, at 1-2, 7-9.)  The docket for case number BAF10000523 lists a violation date of "7/20/2010" for all charges, including those for vandalism and resisting an officer,

28

but that is clearly wrong given that the October 1, 2010 charges
were consolidated with that case (Pl.'s Req. Judicial Notice, Ex.
1 at 37) and the trial transcript reflects that no such charges
resulted from the July 20 events (id. at 1-81).  The trial
transcript clearly shows that the vandalism and resisting-an-
officer convictions resulted from the October 1, 2010 events
(Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 61-63), and
in fact none of the testimony regarding the July 20 events would
have remotely supported such charges (see generally id. at 1-81).
Indeed, Plaintiff's argument that his charge for resisting or
obstructing an officer resulted from the July 20 events conflicts
with his own earlier statements in the FAC (see FAC at 7 (stating
that Plaintiff was treated at hospital for injuries "as a result
of the beating" on October 1 and "police then charged me with
vandalism and resisting arrest"), 10 (stating that jury "found me
not guilty of all charges from July 20, 2010")) and with his
conduct at trial, during which he represented himself and appears
to have been keenly aware that the vandalism and resisting-an-
officer charges resulted from the October 1 events (see, e.g.,
Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex. 2 at 63 (trial
court's acknowledgment, after discussion with Plaintiff and
prosecutor, that Plaintiff was charged with vandalism and
resisting-an-officer based on October 1, 2010 events).  As a
factual matter, therefore, Plaintiff's claim fails.  See
Anderson, 477 U.S. at 249.

   Moreover, Plaintiff's excessive-force claim is Heck barred
because success on it would necessarily imply the invalidity of
his conviction for resisting or obstructing a peace officer.  Two

officers and a paramedic testified at trial that Plaintiff
resisted and obstructed officers on October 1, 2010, starting
soon after he was arrested at his home and continuing unabated
until he was sedated at the hospital, including by pushing and
kicking at them, screaming, refusing to enter patrol cars, and
kicking and damaging a patrol car's doors, among other things.
The officers also testified that they responded to Plaintiff's
obstructive and violent behavior by using some force, such as
control holds and pepper spray; holding Plaintiff down and
attempting to hobble him; lifting and pushing him into the patrol
car; and ultimately holding him down and strapping him to a
backboard so he could be transported to the hospital.

     In the FAC, Plaintiff alleges that the officers' use of
force between his arrest and arrival at the hospital was
unreasonable without addressing whether he resisted or obstructed
them in any way.  (See, e.g., FAC at 6, 12-17.)  In his
opposition to the motion to dismiss, Plaintiff argues that he
never resisted or obstructed the officers and thus that they had
no justification for employing any force at all against him.
(Opp'n at 16 (arguing that Defendants' "own police reports make
it clear that [Plaintiff] was cooperating with the officer's
commands" and "[Plaintiff] was cooperating with police officers
[and] posed no immediate threat"), 17 (asserting that "[a]fter
[Plaintiff] got his dog out of the police car, again he was
helping the officers, the beating started while [Plaintiff] was
handcuffed, not a threat to anyone and making no attempt to flee"
(emphasis in original)), 18 (arguing that when Plaintiff "started
to knock on the car window for ventilation and medical

assistance," "Lopez opened the back door . . . and pepper sprayed
[Plaintiff] one more time in the face" and that Plaintiff later
"knocked on the window for help" and officers "pulled the car
over," "pulled [Plaintiff] out of the patrol car[,] and got
physical with him again"; other officers later "arrived and
continued the beatings"), 19 ("Defendants had no reason to use
excessive force on [Plaintiff], let alone handcuff him," because
facts "show he was not causing a disturbance, resisting, fleeing,
or threatening anyone's safety").)

Plaintiff's success on his claim that the officers' force
was unreasonable because he was cooperative with them would
necessarily imply the invalidity of his conviction for resisting
or obstructing officers, and likely his conviction for vandalism
of the police car, too. See Rodriguez, 535 F. App'x at 645 ("to
the extent Plaintiffs maintain they did nothing wrong and were
arrested without reason, the district court correctly dismissed
their § 1983 . . . claims in light of Heck . . . because success
on such claims would necessarily imply Plaintiffs did not violate
§ 148(a)(1)"); Yount, 43 Cal. 4th at 898 ("to the extent that
Yount's section 1983 claim alleges that he offered no resistance,
that he posed no reasonable threat of obstruction to the
officers, and that the officers had no justification to employ
*any* force against him at the time he was shot, the claim is
inconsistent with his conviction for resisting the officers and
is barred under Heck"); compare Beets, 669 F.3d at 1042 ("an
allegation of excessive force by a police officer would not be
barred by Heck if it were distinct temporally or spatially from
the factual basis for the person's conviction"); Galvan v. City

31

of La Habra, SACV 12-2103 JGB (RNBx), 2014 WL 1370747, at *15 (C.D. Cal. Apr. 8, 2014) ("Galvan's actions in failing to put the cell phone down, while violating California Penal Code section 148(a)(1), may not justify the use of excessive force in effecting the arrest — in this case, shooting Galvan three times."). Plaintiff has never acknowledged that he was resisting arrest or, in that context, alleged that the force officers used to subdue him was nonetheless excessive.

Plaintiff erroneously contends that a finding that his claim is Heck barred is inconsistent with the Ninth Circuit's decision in Hooper, 629 F.3d 1127. In Hooper, the plaintiff jerked her hand away from the deputy when he attempted to place her under arrest, leading to a struggle that ended with the plaintiff lying on her stomach on the ground with the deputy on top of her. Id. at 1129. The plaintiff struggled briefly, then stopped resisting. Id. At that point, the deputy called his police dog, which bit the plaintiff's head twice, tearing off large portions of her scalp. Id. The plaintiff later pleaded guilty to resisting a peace officer under section 148(a)(1). Id.

In assessing whether the plaintiff's § 1983 claim for excessive force was Heck barred, the Ninth Circuit noted that plaintiff did "not dispute the lawfulness of her arrest, nor [did] she dispute that she resisted arrest"; rather, she argued that the deputy "used excessive force in response to her resistance." Id. The Ninth Circuit concluded that the plaintiff's § 1983 excessive-force claim was not Heck barred based on her section 148(a)(1) conviction because it was "based on different actions during 'one continuous transaction.'" Id.

32

1    at 1134.  Thus, "[a] holding in [plaintiff's] § 1983 case that

2    the use of the dog was excessive force would not negate the

3    lawfulness of the initial arrest attempt, or negate the

4    unlawfulness of [plaintiff's] attempt to resist it when she

5    jerked her hand away from [the officer]."  Id. at 1133

6    (alteration and internal quotation marks omitted).  Here, by

7    contrast, Plaintiff alleges that he never gave Defendants any

8    reason at all to use force against him, and a favorable finding

9    on his claim would therefore undermine his section 148(a)(1)

10   conviction, which stemmed from his actions shortly after his

11   arrest until and throughout his transportation to the hospital.

12   As such, Hooper does not support his claim, which is Heck barred.

13          C.    Summary Judgment Is Warranted on Plaintiff's Claims

14                Against the Riverside County Sheriff's Department

15        The Riverside County Sheriff's Department contends that

16   summary judgment is appropriate because Plaintiff has failed to

17   show any constitutional violations resulting from any unlawful

18   county policy or custom.  (Mot. Summ. J. at 13.)

19                1.    Applicable law

20        Municipalities and other local government units are

21   considered "persons" under § 1983 and therefore may be liable for

22   causing a constitutional deprivation.  Monell v. Dep't of Soc.

23   Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d

24   611 (1978); Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir.

25   2006).  Because no respondeat superior liability exists under

26   § 1983, a municipality is liable only for injuries that arise

27   from an official policy or custom or a longstanding practice.

28   Monell, 436 U.S. at 694; City of Canton v. Harris, 489 U.S. 378,

                              33

385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989).  A
plaintiff must show "that a [county] employee committed the
alleged constitutional violation pursuant to a formal
governmental policy or a longstanding practice or custom which
constitutes the standard operating procedure of the local
governmental entity."  Gillette v. Delmore, 979 F.2d 1342, 1346
(9th Cir. 1992) (internal quotation marks omitted).  In addition,
he must show that the policy was "(1) the cause in fact and (2)
the proximate cause of the constitutional deprivation."  Trevino
v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  "Liability for
improper custom may not be predicated on isolated or sporadic
incidents; it must be founded upon practices of sufficient
duration, frequency and consistency that the conduct has become a
traditional method of carrying out policy."  Id. at 918; Thompson
v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989)
("Consistent with the commonly understood meaning of custom,
proof of random acts or isolated events are [sic] insufficient to
establish custom."), overruled on other grounds, Bull v. City &
Cnty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc).

   A plaintiff may also establish municipal liability by
demonstrating that the alleged constitutional violation was
caused by a failure to train municipal employees adequately.  See
Harris, 489 U.S. at 388.  A plaintiff alleging a failure-to-train
claim must show the following: (1) he was deprived of a
constitutional right; (2) the municipality had a training policy
that "amounts to deliberate indifference to the constitutional
rights of the persons with whom [its police officers] are likely
to come into contact"; and (3) his constitutional injury would

34

not have happened had the municipality properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007) (internal quotation marks omitted, alteration in original).

Finally, the Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." Trevino, 99 F.3d at 920; Sheehan v. City & Cnty. of S.F., 743 F.3d 1211, 1231 (9th Cir. 2014) (internal quotation marks omitted). "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." Sheehan, 743 F.3d at 1231 (internal quotation marks omitted); accord Gillette, 979 F.2d at 1346-47.

2.   *Discussion*

The sheriff's department is entitled to summary judgment because Plaintiff has failed to produce any evidence of a formal sheriff's department regulation or policy that caused his alleged injuries, see Gillette, 979 F.2d at 1346; Trevino, 99 F.3d at 918, nor has he pointed to any evidence showing a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity," Gillette, 979 F.2d at 1346-47 (internal quotation marks omitted); see also Monell, 436 U.S. at 691 (noting that custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" policy).

Plaintiff instead contends that "Defendants' unconstitutional actions alone" are sufficient to prove that the

sheriff's department maintained an unlawful policy or failed to
train its employees.  (Opp'n at 22.)  But even if Defendants
somehow violated Plaintiff's constitutional rights by arresting
and using force against him, that alone would not be sufficient
to establish <u>Monell</u> liability.  <u>See</u> <u>Meehan v. L.A. Cnty.</u>, 856
F.2d 102, 107 (9th Cir. 1988) (two incidents not sufficient to
establish custom).  Plaintiff also argues that the sheriff's
department "ratified" the deputies' conduct by failing to
discipline them (Opp'n at 23-24), but a mere failure to
discipline does not amount to ratification of an employee's
actions.  <u>See</u> <u>Sheehan</u>, 743 F.3d at 1231; <u>see also</u> <u>Clouthier v.</u>
<u>Cnty. of Contra Costa</u>, 591 F.3d 1232, 1253 (9th Cir. 2010) ("bare
allegation" that decision maker failed to discipline employees,
without more, insufficient to establish ratification).

     Finally, Plaintiff argues that summary judgment should not
be granted on his <u>Monell</u> claim because Defendants "did not even
try to show the court that there is not such a policy, practice,
or custom, or that the County properly trained them or that the
County did not ratify the officers' actions."  (Opp'n at 22.)
But Plaintiff, not Defendants, would bear the burden of proving
<u>Monell</u> liability at trial.  And he has pointed to no unlawful
official policy or longstanding practice that led to his
injuries.  Thus, summary judgment on Plaintiff's claims against
the sheriff's department is appropriate.  <u>Celotex</u>, 477 U.S. at
322.

**II.  <u>Plaintiff's Motion to Amend Should be Denied</u>**

     Plaintiff seeks leave to amend the FAC to add three
defendants: Deputy Pike, who was allegedly involved in the

36

excessive-force and unlawful-arrest incidents on October 1, 2010, and was "mentioned previously in the [FAC]"; paramedic Bradley Sampson, who allegedly "violated [Plaintiff's] constitutional right by trying viciously to inject [him] and forcibly perform acts without [his] consent or concern"; and San Gorgonio Hospital, because Plaintiff "did not give medical authorization or consent to the nurse waiting in the hallway of the hospital to inject Plaintiff with a syringe before being admitted to the emergency room."  (Mem. P. & A. Supp. Mot. Amend at 4-5.)

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within certain time limits; in all other circumstances, it may amend "only with the opposing party's written consent or the court's leave." Because the relevant time period for amending as a matter of course has long since elapsed, Plaintiff has already amended his complaint, and Defendants have opposed Plaintiff's motion, he requires the Court's leave to amend the FAC.

When a party requests leave to amend a pleading, the court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Such leave, however, "is not to be granted automatically." <u>Zivkovic v. S. Cal. Edison Co.</u>, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal quotation marks omitted).  Rather, "[t]he court considers five factors in assessing the propriety of leave to amend — bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." <u>United States v. Corinthian Colls.</u>, 655 F.3d 984, 995 (9th Cir. 2011); <u>accord</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed.

1  2d 222 (1962).

2      Consideration of the relevant factors weighs against

3  granting Plaintiff leave to amend the FAC.  First, Plaintiff

4  unduly delayed filing his motion, and allowing him to amend the

5  FAC at this late stage will substantially prejudice Defendants.

6  Although Plaintiff argues that the motion was "timely" because he

7  filed it "before the deadline of September 16, 2013" (Mem. P. &

8  A. at 4), that was actually the deadline for filing substantive

9  motions "directed to the Court's jurisdiction or to the merits of

10 any claim or defense" (Feb. 20, 2013 Order at 3), not for seeking

11 leave to amend the FAC.  Moreover, Plaintiff filed his motion two

12 months after the close of discovery and on the same day

13 Defendants filed their motion for summary judgment, September 16,

14 2013, after they alerted him they were going to do so.  (See

15 Tanada Decl. ¶¶ 3-4.)  Thus, as Defendants argue, granting the

16 motion would prejudice them because the "discovery cut-off date

17 has long since passed" and they "would have been able to attack

18 [the new claims] in the summary judgment motion had Plaintiff

19 moved to amend his complaint before Defendants filed [it]."

20 (Defs.' Opp'n to Pl.'s Mot. Leave to Amend at 3); see Zivkovic,

21 302 F.3d at 1087 (district court did not abuse discretion in

22 denying motion to amend because "[t]he additional causes of

23 action would have required further discovery, which was to close

24 five days after the motion to amend was filed," and "requirement

25 of additional discovery would have prejudiced [defendant] and

26 delayed the proceedings"); Solomon v. N. Am. Life & Cas. Ins.

27 Co., 151 F.3d 1132, 1139 (9th Cir. 1998) (district court did not

28 abuse discretion in denying motion to amend when motion was made

                                 38

"on the eve of the discovery deadline" and "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings"); Kaplan v. Rose, 49 F.3d 1364, 1370 (9th Cir. 1994) ("Expense, delay, and wear and tear on individuals and companies count toward prejudice."); Fausett v. Leblanc, __ F. App'x __, 2014 WL 28581, at *1 (9th Cir. 2014) ("The district court did not abuse its discretion by denying [plaintiff's] motion to amend his complaint, which was filed after discovery was closed.")

Plaintiff attempts to justify his delay by asserting that he obtained additional information during discovery regarding "the name of a Defendant, Deputy Pike," Sampson's attempt to "viciously" inject him without his "consent or concern," and the nurse's injection of him without "medical authorization or consent" upon his arrival at San Gorgonio Hospital. (Mem. P. & A. Supp. Mot. Amend at 4-5.) But in the FAC, Plaintiff explicitly refers to both Pike and Sampson and describes their roles in the alleged constitutional violations. (See, e.g., FAC at 14 (alleging that Deputy Pike and others "were forcibly pressing their body weight with their knees on my spinal cord, shoulders, and lower back" and that "deputy Burk [sic] and Pike grabbed my arms which were handcuffed behind my back and they helped drag me by pulling the handcuffs"), 15 (alleging that Deputy Pike and others "threw me with so much force into the patrol car" that he fell out other side of car), 16 (alleging that Deputy Pike and others "continued to repeatedly beat me"), 17 (alleging that Deputy Pike and others were "pressing their body weight with their knees on my shoulders and lower back"), 17-18 (alleging that deputies and a paramedic held Plaintiff down

39

1  "so the AMR paramedic, Bradley Sampson, could inject me with a

2  syringe without my knowledge or permission" and that Sampson

3  tried again to inject Plaintiff "a few miles from the hospital"

4  and after they arrived there).)

5      Moreover, at Plaintiff's trial in August 2011, Sampson

6  clearly testified that he and another paramedic repeatedly

7  attempted to place an IV in Plaintiff's arm during the ambulance

8  ride (see, e.g., Pl.'s Jan. 10, 2014 Req. Judicial Notice, Ex. 2

9  at 185-86), and another witness testified that Plaintiff was

10  sedated shortly after his arrival at the hospital (id. at 138-

11  39).  Thus, Plaintiff has long known of these acts and their

12  perpetrators.

13      In his response to Defendants' opposition to the motion for

14  leave to amend, Plaintiff asserts that he had good cause for his

15  delay because he had a newborn baby with jaundice and had to

16  spend "more time" caring for him.  (Pl.'s Resp. Opp'n to Mot.

17  Leave Amend at 1.)  But even assuming Plaintiff was unable to

18  file his motion during the unidentified period his baby suffered

19  from jaundice, that nevertheless fails to explain why Plaintiff

20  waited until September 2013 to seek to amend his complaint with

21  claims he knew about for years, likely at least as early as his

22  August 2011 trial.  Plaintiff therefore provides no reasonable

23  justification for failing to name Pike, Sampson, and San Gorgonio

24  Hospital as defendants in the FAC, which was filed in November

25  2012, or for waiting until 10 months after that (and two months

26  after the close of discovery, when he supposedly discovered his

27  claims) to request leave to add them as defendants.  See Kaplan,

28  49 F.3d at 1370 ("Late amendments to assert new theories are not

1   reviewed favorably when the facts and the theory have been known
2   to the party seeking amendment since the inception of the cause
3   of action." (alteration and internal quotation marks omitted)).
4        Plaintiff contends that the parties "agreed verbally
5   regarding [amendment] during Discovery."  (Mem. P. & A. Supp.
6   Mot. Amend at 4.)  Plaintiff, however, has produced no
7   stipulation or other evidence of the parties' alleged agreement,
8   and Defendants maintain that they "never agreed to allow
9   Plaintiff to amend his pleading" again.  (Defs.' Opp'n to Pl.'s
10  Mot. Leave to Amend at 1 (emphasis in original); see also Tanada
11  Decl. ¶¶ 2, 4.)  Thus, the alleged "agreement" between the
12  parties does not weigh in favor of granting Plaintiff's request
13  for leave to amend.
14       Plaintiff's request should also be denied because he has
15  already amended his complaint once and because the amendment he
16  seeks would likely be futile.  See Nunes v. Ashcroft, 375 F.3d
17  805, 808 (9th Cir. 2004) (as amended) ("Futility alone can
18  justify the denial of a motion for leave to amend."); Saul v.
19  United States, 928 F.2d 829, 843 (9th Cir. 1991) (holding that
20  leave to amend may be denied when amendment would be futile or
21  when amended complaint would be subject to dismissal).  As
22  discussed above, summary judgment in favor of Defendants is
23  appropriate on Plaintiff's unlawful-arrest and excessive-force
24  claims; adding Pike as a defendant would not change that result.
25  Moreover, San Gorgonio Hospital appears to be a private hospital,
26  and conduct by a private actor generally is not "under color of
27  state law" for purposes of a § 1983 suit.  See West v. Atkins,
28  487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 40 (1988)

41

(to state § 1983 claim, plaintiff "must show that the alleged
deprivation was committed by a person acting under color of state
law"); <u>Florer v. Congregation Pidyon Shevuyim, N.A.</u>, 639 F.3d
916, 922 (9th Cir. 2011) ("presumption" is "that conduct by
private actors is not state action"); <u>Briley v. California</u>, 564
F.2d 849, 855-56 (9th Cir. 1977) (noting that in Ninth Circuit
"private hospitals and physicians have consistently been
dismissed from § 1983 actions for failing to come within the
color of state law requirement").  This same issue could
potentially defeat a § 1983 claim against paramedic Sampson.
<u>See, e.g.</u>, <u>Chasse v. Humphreys</u>, CV-07-189-HU, 2009 WL 3334912, at
*5-12 (D. Or. Oct. 13, 2009) (finding paramedics did not act
under color of state law); <u>but see</u> <u>Lopez v. Dep't of Health
Servs.</u>, 939 F.2d 881, 883 (9th Cir. 1991) (ambulance service that
was "under contract with the state of Arizona to provide medical
services to indigent citizens" acted under color of state law).

        For all of these reasons, Plaintiff's request to amend the
FAC should be denied.

### III. <u>Riverside County's Counterclaims Should Be Dismissed</u>

        On February 14, 2013, Defendant County of Riverside (which
it asserts was erroneously sued and served as Riverside County
Sheriff's Department) filed compulsory counterclaims under state
law for damages arising from Plaintiff's vandalism of the police
car on October 1, 2010, asserting that the Court has supplemental
jurisdiction over those claims under 28 U.S.C. § 1367(a).

        A court may decline to exercise supplemental jurisdiction
over state-law claims, including compulsory counterclaims, when
it "has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c)(3); see Carlsbad Tech., Inc.
v. HIF Bio, Inc., 556 U.S. 635, 639, 129 S. Ct. 1862, 1866, 173
L. Ed. 2d 843 (2009) ("A district court's decision whether to
exercise [supplemental] jurisdiction after dismissing every claim
over which it had original jurisdiction is purely
discretionary."); Little v. Kitsap Transit, C08-5010RJB, 2008 WL
5429670, at *1 (W.D. Wash. Dec. 31, 2008) (dismissing defendants'
state-law counterclaims after granting summary judgment in their
favor on all claims over which it had original jurisdiction).  In
determining whether to exercise supplemental jurisdiction over a
state-law claim, a court should consider whether doing so would
advance "the values of judicial economy, convenience, fairness,
and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350
& n.7, 108 S. Ct. 614, 619 & n.7, 98 L. Ed. 2d 720 (1988); accord
Acri v. Varian Assocs., 114 F.3d 999, 1001 (9th Cir. 1997) (en
banc).  "[I]n the usual case in which all federal-law claims are
eliminated before trial, the balance of factors to be considered
under the pendent jurisdiction doctrine . . . will point toward
declining to exercise jurisdiction over the remaining state-law
claims." Carnegie-Mellon Univ., 484 U.S. at 350 n.7.

     Here, the Court has recommended denial of all Plaintiff's
federal claims.  Because the County's state-law counterclaims
have never been argued in this Court, judicial economy weighs in
favor of their dismissal.  Further, the values of convenience,
fairness, and comity would best be served by allowing the
California courts to decide claims that arise under state law.
See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct.
1130, 1139, 16 L. Ed. 2d 218 (1966) ("[n]eedless decisions of

1   state law should be avoided both as a matter of comity and to

2   promote justice between the parties"). Accordingly, the Court

3   should exercise its discretion to dismiss the County's state-law

4   counterclaims without prejudice to its raising them in state

5   court. See Carlsbad Tech., 556 U.S. at 639.

6                          **RECOMMENDATION**

7         IT THEREFORE IS RECOMMENDED that the District Judge issue an

8   Order (1) approving and accepting this Report and Recommendation;

9   (2) granting Defendants' summary judgment motion; (3) denying

10  Plaintiff's motion for leave to amend the FAC; (4) dismissing

11  Defendant County's counterclaims without prejudice; and (5)

12  entering judgment for Defendants on Plaintiff's claims.

16  DATED: May 7, 2014

    JEAN ROSENBLUTH
    U.S. Magistrate Judge

                              44